STATE OF CONNECTICUT *v.* DAVID MULLINGS

HOUSE, C. J., COTTER, SHAPIRO, LOISELLE and BOGDANSKI, Js.

Argued December 4, 1973—decision released April 16, 1974

*Thomas Corradino,* for the appellant (defendant).

*Jerrold H. Barnett,* assistant state's attorney, with whom were *Ernest J. Diette, Jr.,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, and *Dennis F. Gaffney,* assistant state's attorney, for the appellee (state).

SHAPIRO, J. After a trial by jury, the defendant, David Mullings, was found guilty of selling heroin in violation of § 19-480 (a) of the General Statutes. The defendant's motion to set aside the verdict was denied by the trial court and from the judgment rendered thereon he has appealed to this court.

The first of several assignments of error pursued by the defendant in his brief is that the court erred in failing to grant his motion to set aside the verdict of guilty because it is not supported by the evidence. In his brief, the defendant appears to limit his contention to the claim that the death of Officer Frank Hawley before the trial created a serious gap in the case against him because Hawley could not testify or be cross-examined. The trial court's action on a motion to set aside a verdict on the ground that it was unsupported by the evidence is normally reviewed on the evidence printed in the appendices to the briefs. *State* v. *Hall,* 165 Conn. 599, 601, 345 A.2d 17; *State* v. *Benton,* 161 Conn. 404, 406, 288 A.2d 411; *State* v. *Mariano,* 152 Conn. 85, 100, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962. We have made a review in this case, but because of the manner in which the motion to set aside the verdict is raised and argued in the defendant's brief, we also have found it necessary to consult the transcript of evidence in order to determine whether the state has sustained its burden of proving the defendant guilty beyond

270

a reasonable doubt.  Practice Book § 721; see *State* v. *Magoon,* 156 Conn. 328, 335, 240 A.2d 853; *State* v. *Bill,* 146 Conn. 693, 694, 155 A.2d 752.

The evidence printed in the appendices to the briefs would permit the jury to find the following facts:  In January of 1970, the New Haven police department conducted an undercover narcotics operation in which the participants were Officer Hawley and Detective Francis DeGrand.  As part of the operation, Hawley posed as the proprietor of a store at 719 Congress Avenue.  DeGrand, who had been trained and had worked in the narcotics field, was assigned the task of observing Hawley and of corroborating his activities with respect to narcotics sales.

The operation included using a Volkswagen panel-bus-type vehicle which had one-way glass windows on its four sides.  This glass enabled a person inside the vehicle to look out and not to be seen from the outside.  The vehicle was parked in a location affording a good view of the store and the general area where Hawley was working.

On January 21, 1970, at approximately 4 o'clock in the afternoon, the vehicle was parked directly in front of the store, on the same side of the street, with DeGrand sitting inside it looking out the side window at Hawley.  The side window through which DeGrand was looking was approximately twelve by eighteen inches and its curtains had been pulled back so that they covered only about two inches on each side.  DeGrand saw Hawley leave the store and stand on the sidewalk, where he was approached by the defendant and engaged in a short conversation.  DeGrand saw the defendant hand something to Officer Hawley who in turn took some

money out of his pocket, counted some out and handed it to the defendant. DeGrand at that time recognized the defendant, whom he had known for approximately three years and also recognized him at the trial. After the defendant had received money from Hawley, he turned so that his back was toward Hawley and DeGrand and proceeded up Congress Avenue.

As the defendant was walking up Congress Avenue, Hawley took what the defendant had given him and held it between his thumb and forefinger. At that time, what the defendant had given Hawley appeared to DeGrand to be glassine bags or envelopes. Hawley then held the glassine bags up so that DeGrand could plainly see what they were. While moving towards the side door of the vehicle, Hawley showed DeGrand the objects and then closed his hand for a few seconds. He opened the door, dropped the glassine envelopes or bags inside the vehicle and closed the door. DeGrand saw Hawley's hand while he was approaching the vehicle door, but probably did not see his hand for a split second when the door was being opened. Thereafter, Officer Hawley entered the vehicle by the driver's side and drove it to Orange Street and Pitkin Alley in New Haven, where DeGrand got out and took the bags to his office at the intelligence division of the detective bureau.

There was evidence from which the jury could have found that DeGrand placed the bags in an envelope with the defendant's name on the envelope and locked it in a safe. The next day DeGrand took the envelope with its contents to the state toxicological laboratory, where Abraham Stolman, chief toxicologist for the state, subsequently analyzed the

contents of the six glassine bags and found that four of the six bags contained heroin.

The defendant in his brief takes the position that DeGrand may have lost sight of Hawley's hand when watching the defendant walk down Congress Avenue or for the fraction of a second when moving backwards in the vehicle as Hawley opened the door. He maintains that Hawley, thus, had "numerous opportunities to retain what was passed to him, if it was not glassine bags, and then show glassine bags to DeGrand as if he had received them from the defendant, finally throwing them in the vehicle." The defendant further argues that Hawley was the only person who could say what was handed to him, and his death "deprived . . . [the defendant] of the right of critical cross-examination." The validity of this claim can only be decided by determining whether the presence of Hawley as a witness was a necessary prerequisite to the conviction of the defendant.

"As has been said so often, proof beyond a reasonable doubt is such proof as precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclusion. The requirement that evidence must be such as satisfies beyond a reasonable doubt 'does not mean that the proof must be beyond a possible doubt, and a possible supposition of innocence is a far different thing from a reasonable hypothesis.' " *State* v. *Smith,* 138 Conn. 196, 200, 82 A.2d 816; *State* v. *Hall,* 165 Conn. 599, 603, 345 A.2d 17.

In the case before us, DeGrand had known the defendant for approximately three years and recognized him when he approached Hawley at the time

of the transaction in question. While in DeGrand's view, Hawley held in his hands what the defendant had given him in exchange for money. Immediately after the transaction was completed and the defendant had turned his back, Hawley, still in DeGrand's sight, held what he received from the defendant between his forefinger and his thumb. As the defendant was walking away, Hawley held the objects up in the direction of the vehicle. At that time DeGrand could plainly see that they were glassine bags. Then, still holding the glassine bags in his hand and still in DeGrand's view, Hawley came to the vehicle, opened the door and dropped the bags inside. After Hawley had exhibited the bags to DeGrand, the only time that his hand might have been out of DeGrand's vision was the split second when Hawley opened the vehicle door and DeGrand moved back.

From the evidence before them, it is obvious that the jury, by their verdict, inferred that the glassine bags thrown in the van were the same objects the defendant passed to Hawley. Even if DeGrand were unable to state unequivocally that he had an unobstructed view of the glassine bags in Hawley's hand from the time Hawley received them until the time he placed them in the vehicle, the jury could reasonably infer that the bags DeGrand received were the same bags the defendant had handed to Hawley. Only minutes had elapsed between the transfer from the defendant to Hawley and then from Hawley to DeGrand. See *State* v. *Englehart,* 158 Conn. 117, 123, 256 A.2d 231; *State* v. *DeCoster,* 147 Conn. 502, 505, 162 A.2d 704.

In reviewing inferences drawn by a jury, the inquiry of the court is limited to determining

whether the inferences were so unreasonable as to be unjustifiable. *State* v. *McGinnis,* 158 Conn. 124, 130, 256 A.2d 241. In this instance, we are convinced that the inference drawn by the jury, that the glassine bags thrown in the van were the same objects passed to Hawley by the defendant, was both reasonable and justifiable. Accordingly, the claim of the defendant that the testimony and cross-examination of Hawley were critical to a verdict of guilty is without merit.

There was ample evidence to prove the guilt of the defendant as charged. The court did not err in refusing to set aside the verdict.

The next assignment of error by the defendant is that the court erred in its charge to the jury by commenting on DeGrand's three-year acquaintance with the defendant prior to the alleged sale of narcotics. The defendant claims that this comment overemphasized the fact as it relates to the issue of identification. We find no merit to this claim.

The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter. *State* v. *Searles,* 113 Conn. 247, 257–58, 155 A. 213; *State* v. *Wade,* 96 Conn. 238, 245–46, 113 A. 458; *State* v. *Cabaudo,* 83 Conn. 160, 163, 76 A. 42.

" 'The ultimate test of a court's charge is whether it fairly presents the case to a jury in such a way that injustice is not done to either party under established rules of law.' 'A charge must be read in its entirety; . . . and it is to be considered from the

standpoint of its effect upon the jury in guiding them to a correct verdict.'" *Siladi* v. *McNamara,* 164 Conn. 510, 515, 325 A.2d 277. The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result. *Robinson* v. *Faulkner,* 163 Conn. 365, 371, 306 A.2d 857.

In the present case, the court informed the jury at the very start of the charge that they had sharply separated duties in that the province of the court was to state the law and that of the jury was to decide the facts of the case as they found them to be disclosed by the evidence. The jury were told that they were the sole judges of whether or not the facts were sufficient to demonstrate the defendant's guilt. DeGrand, a policeman, and Stolman, chief toxicologist for the state, were the only witnesses who testified at the trial. The court explained that the former was entitled to no special sanctity because of his occupation and that the jury were not bound by the testimony of the latter because of his expertise. The court finally reiterated that it was for the jury to decide what witnesses and what part of the evidence they believed.

With regard to the specific accusation made in the information, the court analyzed the elements of the crime and then made the following statement claimed to be offensive by the defendant: "Secondly, it is also essential that the State prove that this accused sold a narcotic drug, heroin. Now you are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is on the State to prove beyond a reasonable doubt not only that the crime alleged was committed, but, also, that the

defendant was the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant as the person who approached Officer Hawley, and in this connection you recall the officer's testimony was that he had known this accused for some three years, as I recall it, but it's your recollection of what his testimony was."

Immediately after making the statement, the court again emphasized that "[i]n this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is the burden on the defendant to prove his innocence if the facts and circumstances that have been introduced into evidence raise a reasonable doubt as to whether the defendant was the person who committed the crime charged."

In view of the above statement, no portion of the charge can be said to lack fairness or impartiality. Considered as a whole, the charge presented the case to the jury in such a manner that there was no injustice done. The defendant's claim of overemphasis must fail.

The final assignment of error by the defendant is that the court erred in restricting the cross-examination of DeGrand by sustaining two objections raised by the state during the course of cross-examination. The first objection was raised when the defense counsel, after cross-examining DeGrand as to his opportunity to observe the alleged transaction between Hawley and the defendant, asked DeGrand what a "burn" was. Upon objection, the jury were excused and counsel for the defense made an offer of proof defining a "burn" as "the purchase

of a substance, sometimes in glassine bags, which substance is subsequently discovered not to be narcotic." The court inquired as to the relevancy of the inquiry and after argument sustained the state's objection and noted an exception. The defendant in his brief argues that it was relevant to ask DeGrand what a "burn" was as a preliminary to inquiry into whether it is a characteristic of the illicit narcotics traffic. He contends that on cross-examination he should have been allowed to examine the nature of that traffic "as it affected this case."

The court's ruling excluding such a question is to be tested by the claims of proof in the finding. Practice Book § 648. In this case, the claims of both parties arose from their respective examinations of DeGrand.

The state's claims were that DeGrand saw the defendant hand something to Hawley in exchange for money; that when the defendant turned his back and was walking away Hawley folded what he had received, between his thumb and forefinger; that what he received appeared to DeGrand to be glassine bags; that upon holding them up in DeGrand's direction DeGrand could plainly see what they were; that Hawley showed DeGrand the glassine bags in his hand as he approached the vehicle in which DeGrand was sitting; and that DeGrand was able to see Hawley's hand while he was approaching the vehicle except for a split second when the door was opened.

The defendant's claims were that DeGrand could not identify the item handed to Hawley or the hand with which he received the item; that Hawley removed currency from his pocket, counted some out to a person and returned the money to his

pocket; that DeGrand could not remember with which hand Hawley reached for the currency nor from which pocket he took the currency; that after the transaction DeGrand took his eyes off Hawley to watch the alleged seller depart; that for a brief time DeGrand lost sight of Hawley's hand as the latter opened the door after having approached the vehicle; and that DeGrand did not have occasion to search Hawley prior to or after the above transaction.

To the court's query as to relevancy, the defendant claimed his question was relevant because Hawley had made at least twenty-five purchases and perhaps more contacts in the course of his investigation. Thereupon, the court reminded the defendant that no such evidence had been introduced. The court agreed that the defendant had a right to ask on cross-examination how many purchases or contacts were made by DeGrand; but the record before us indicates that the question was never asked.

As a result the defendant failed to lay a proper basis for asking DeGrand what a "burn" was. He claimed its admissibility only to show that "even if the jury believes that the something which was passed, was later, in fact, the items held up for this Officer's observation, it could possibly be [that] when he reached his hand into his pocket to get the money, he could have gotten something other than narcotics, in fact."

We conclude that DeGrand's knowledge or lack of knowledge of the term "burn" would have no bearing on what Hawley may have received, or what he showed or delivered to DeGrand. "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one,

taken alone or in connection with other facts, renders the existence of the other either certain or more probable." *State* v. *Sebastian,* 81 Conn. 1, 3, 69 A. 1054; *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639. Relevancy is a concept for which the law furnishes no precise or universal test. The question must be determined in each case according to the teachings of reason and judicial experience. *State* v. *Pascucci,* 164 Conn. 69, 70–71, 316 A.2d 750. "The trial court has broad discretion in determining the relevancy of evidence." *State* v. *Lombardo,* 163 Conn. 241, 243, 304 A.2d 36; *Johnson* v. *Newell,* 160 Conn. 269, 277, 278 A.2d 776.

Accordingly, we find no abuse of discretion in the ruling of the trial court sustaining the objection to the cross-examination of DeGrand which sought to inquire whether DeGrand knew what a "burn" was.

The second objection on cross-examination, raised by the state and sustained by the court, which is now assigned as error occurred when the defendant asked DeGrand whether, to his knowledge, Hawley had occasion to take single action bets as part of his assignment. The defendant claims that this question should have been allowed as relevant because (1) DeGrand could not identify what was passed at the time of the transaction, and (2) Hawley had the opportunity to make it appear to DeGrand that he was given glassine bags when in fact he was not.

The first basis of this final claim advanced by the defendant suggests that the receipt of a single action bet is so similar in appearance to the receipt of glassine bags that an observer such as DeGrand, a few feet away, could have mistaken one for the other. This suggestion is unsupported by the claims

of proof in the finding. There is nothing to suggest such a similarity between the two types of transactions.

The second basis for this claim advanced by the defendant relates to the assertion that Hawley had the opportunity to mislead or deceive DeGrand by substituting glassine bags for betting paper. This assertion is apparently premised upon the idea that trying this case without Hawley as a witness somehow deprived the defendant of his rights. For the reasons expressed earlier in this opinion with regard to the motion to set aside the verdict of guilty, we do not agree.

This second question was no more relevant than the first question just discussed, and it was not an abuse of discretion for the trial court to sustain the objection of the state to this question concerning the taking of single action bets.

The remaining assignments of error were not briefed and are considered abandoned. *State* v. *Hall*, 165 Conn. 599, 603, 345 A.2d 17; *State* v. *Brown*, 163 Conn. 52, 55, 301 A.2d 547.

There is no error.

In this opinion the other judges concurred.